## CRUMPTON *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 1310.  Argued and submitted January 16, 1891. — Decided February 2, 1891.

Whether a verdict in a trial for murder was contrary to the evidence cannot be considered in this court, if there was any evidence proper to go to the jury in support of the verdict.

When the defendant's counsel in a criminal trial fails to at once call the attention of the court to remarks by the prosecuting officer which are supposed to be objectionable, and to request its interposition, and, in case of refusal, to note an exception, an assignment of error in regard to them is untenable.

Whether, in a criminal case, a court will grant an application by the prisoner, made during the trial, for process for witnesses, and will delay the trial during the execution of the process, is a matter of discretion with the trial court, not reviewable here.

THE case is stated in the opinion.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This was a writ of error sued out under the sixth section of the act of Congress of February 6, 1889, 25 Stat. 655, 656, c. 113, § 6, to review a judgment of the Circuit Court of the United States for the Western District of Arkansas, imposing a sentence of death upon the plaintiff in error for the murder of Sam. M. Morgan, "at the Cherokee Nation, in the Indian country." The plaintiff in error relied for a reversal of the judgment upon the following grounds:

1. That the verdict was contrary to the evidence:

2. That the court erred in permitting the district attorney to refer in his argument to matters not in evidence:

3. That the court erred in refusing to grant the prisoner

sufficient time to procure the testimony of three witnesses, whose testimony he claims was material to his defence.

(1) It is clear that the question, whether the verdict was contrary to the evidence, which is the first error assigned, is not one which can be considered in this court, if there were any evidence proper to go to the jury in support of the verdict.

The testimony on behalf of the government tended to show that deceased had, on the 3d of November, about fifty dollars on his person; and that on the morning of that day, which was Sunday, after having slept together the night before, the prisoner and the deceased, riding two horses belonging to the deceased, started out from the house of Mrs. Harris, to visit some young women by the name of Davis, who lived about four miles away. The prisoner was armed with a pistol.

About noon of that day shots were heard by a witness for the government in the neighborhood of the hole where the body of the deceased was afterwards found, and in 'a short time the defendant was seen riding one horse and leading the other away from this place. Toward evening of the same day the defendant returned to a house in the neighborhood of Mrs. Harris's, with the two horses. When inquired of as to the deceased he said that they had met a man riding in a buggy on the prairie, who had induced the deceased to go with him to the Pawnee Agency. He stated that the deceased had directed him to bring the horses back, to take charge of all his effects, and to pay his debts in case he did not return by a certain time.

Three days before Christmas the body of the deceased was found in the hole above referred to, which was some six or seven feet deep, on the bank of Coody's Creek, and some three miles from Mrs. Harris's. His hat had a bullet hole in it, and his broken skull showed where the bullet had entered it and caused his death. There was no doubt, from what was found on his person, as to whose corpse it was, though the face and front part of his skull had been battered so as to prevent recognition of the features. No money was found in his pockets. It appeared from other evidence, and was admitted by the

defendant, that some time before the disappearance of the deceased the defendant had come upon this hole and was familiar with its location. There was evidence showing that an overcoat belonging to the deceased was in the possession of the defendant the next day after the disappearance of the deceased. Before the finding of the body on the 22d of December, the defendant exhibited two letters which he claimed to have received from the deceased at the Pawnee Agency. They were letters without envelopes. Defendant explained the absence of envelopes by saying that the children had destroyed them. On the trial the letters themselves could not be found, and were not produced. When the body of the deceased was found, and the report of it came to the defendant, he immediately left the settlement in which he lived and went away some twenty or twenty-five miles, where he was arrested.

The evidence for the defendant was conflicting. One man testified that he saw a government witness, Burt by name, in a carriage with the deceased, on the Sunday in question, going toward the place where the body was found, and that later he saw him returning without the deceased. This evidence was at variance with the statement of the defendant himself, who swore that the man in whose buggy the deceased drove away was not Burt.

There is no doubt that this testimony was sufficient to lay before the jury, and it would have been improper to direct a verdict for the defendant. The weight of this evidence and the extent to which it was contradicted or explained away by witnesses on behalf of the defendant, were questions exclusively for the jury, and not reviewable upon writ of error. If the verdict were manifestly against the weight of evidence, defendant was at liberty to move for a new trial upon that ground; but that the granting or refusing of such a motion is a matter of discretion is settled in *Freeborn* v. *Smith,* 2 Wall. 160; *Railway Company* v. *Heck,* 102 U. S. 120; *Lancaster* v. *Collins,* 115 U. S. 222, and many other cases in this court.

(2) The second assignment of error is clearly untenable. It appears that during the argument of the case the defendant's

counsel said to the jury.: " Either the defendant or Burt [a government witness] is guilty of this crime. I will show you that Burt is guilty, and, therefore, that defendant is not." In reply to this, the district attorney, in his closing argument, said: "The issue is squarely made by Mr. Neal, that either the defendant or William Burt is guilty of this crime. I have shown you that Burt is not guilty; therefore, by his logic, the defendant is guilty." No objection was made at the time to this argument, nor was the court requested to interrupt it, or caution the jury against its force; and no exception appears to have been taken. There is no doubt that, in the excitement of an argument, counsel do sometimes make statements which are not fully justified by the evidence. This is not such an error, however, as will necessarily vitiate the verdict or require a new trial. It is the duty of the defendant's counsel at once to call the attention of the court to the objectionable remarks, and request its interposition, and, in case of refusal, to note an exception. Thomp. on Trials, § 962.

In the present case it is by no means clear that the district attorney transcended the proper limits of an argument. Counsel for the defendant had tendered the issue to the jury, that either his client or Burt was guilty of the crime, and we perceive no impropriety in the district attorney accepting the challenge and attempting to demonstrate that Burt was not guilty, and arguing that the jury, upon the issue thus presented. had a right to infer that the defendant was guilty.

(3) The third assignment is based upon the refusal of the court to grant an application by the prisoner for process for three witnesses, such process to be served at the expense of the government. The trial was begun on the 27th of May, 1890; the application was not made until the 31st day of May; just before the defendant was called as the last witness in his own behalf. It would probably have delayed the trial a number of days to send the process into the Indian Territory, make service of it there, and bring in these witnesses to testify. Whether the trial should be delayed for the production of these witnesses was clearly a matter of discretion and not reviewable upon a writ of error. The testimony of

the proposed witnesses seems to have been of little importance, and the application was to subpœna these witnesses at the expense of the government, which would of itself have been a matter of discretion, even had the application been made before the trial began. Rev. Stat. § 878. It is clear that the ruling of the court is not subject to review. *Silsby* v. *Foote*, 14 How. 218; *Cook* v. *Burnley*, 11 Wall. 672, 676.

There is no error in the proceedings in the court below, and the judgment must be  *Affirmed.*